# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR05-1015 LRR |
| vs. | **ORDER** |
| MICHAEL J. VANDENBERG, | |
| Defendant. | |

_____

This matter comes before the court pursuant to the government's November 11, 2005, oral motion for a finding that the defendant is incompetent to stand trial, for the defendant to be ordered into hospitalization at an appropriate treatment facility for such reasonable time as is necessary to determine whether there is a substantial probability that in the foreseeable future he will become competent, or in the alternative, to better evaluate the defendant's competency level, and for the defendant to be ordered to comply with the treatment regimen prescribed by the appropriate clinical staff members of such facility. The government's motion is granted.

## Introduction

The defendant is charged in a two-count indictment filed April 7, 2005. Count 1 charges that on or about May 23, 2003, the defendant:

> by use of an instrument of interstate commerce, that is, the Internet, and by means in and affecting interstate commerce, willfully made a threat, and maliciously conveyed false information, knowing the same to be false, concerning an attempt, to kill, injure, damage, and destroy the persons and property of the Mesa, Arizona Police Department by means of explosives.

The conduct set forth in Count 1 is in violation of Title 18 U.S.C. § § 844(e), (j), and 232(5). Count 2 charges the defendant with knowingly possessing and attempting to possess visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18 U.S.C. § § 2252A(a)(5)(B) and (b)(2). The defendant moved for an independent psychological examination, which was conducted on August 4, 2005 by Dr. Frank Gersh, clinical psychologist. The government then moved for a psychological examination of the defendant pursuant to 18 U.S.C. § 4241(b) on August 22, 2005. The court granted the government's motion on August 25, 2005 and the defendant was evaluated from September 12, 2005 through October 11, 2005. During that time, Dr. Shawn Channell, a forensic psychologist with the Federal Correctional Institution in Waseca, Minnesota, evaluated the defendant and administered psychological tests to him. Upon the defendant's return from the correctional facility, the government moved orally for a competency hearing and for an order directing continued treatment and examination of the defendant. The court held a competency hearing on November 17, 2005, at which the defendant was present and represented by counsel.

## Conclusions of Law

"Due process prohibits the trial and conviction of a defendant who is mentally incompetent." Drope v. Missouri, 420 U.S. 162, 172 (1975). Under 18 U.S.C. § 4244, the test for determining competence to stand trial is "whether the defendant has 'a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether [the defendant] has a rational as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362 U.S. 402 (1960). In a determination of competency the judge is the fact finder and the decision is a factual one. Johnson v. Settle, 184 F. Supp. 103, 106 (W.D. Mo. 1960). The determination is not conducive to automatic formulae but instead must be decided on a case-by-case consideration of all the circumstances. See Hansford v. United States, 365 F.2d 920, 923 (U.S.App.D.C. 1966). Pursuant to 18 U.S.C. § 4241, upon a finding by the court that the

defendant is incompetent to stand trial, the court shall commit the defendant to the custody of the Attorney General, who shall hospitalize the defendant for treatment in a suitable facility for such reasonable period of time as is necessary, not to exceed four months, for the defendant to attain the requisite capacity for the trial to proceed.

At the defendant's request, he was examined by Dr. Gersh on August 4, 2005. Dr. Gersh's evaluation of the defendant included a one-hour clinical interview, as well as administration of a variety of psychological tests and a review of the defendant's records. The tests administered included the Wechsler Adult Intelligence Scale-III (WAIS-III)[1], Logical Memory I and II subtests of the Wechsler Memory Scale Revised, Paired Associate Learning subtest of the Wechsler Memory Scale, Rey Auditory Verbal Learning Test, Benton Visual Retention Test, Rey Figure, Controlled Oral Word Association Test, Attentional Capacity Test and Competency Assessment Instrument. Dr. Gersh did not administer any tests to evaluate the defendant for malingering or feigning. Dr. Gersh diagnosed the plaintiff with Dementia secondary to stroke with evidence of impairment in multiple cognitive areas including intelligence, memory and concentration, high blood pressure, psychological stressors, unemployment, disability, and difficulties in the area of daily living and managing money secondary to the stroke.

The government moves that the court find the defendant incompetent to stand trial, based in part upon the opinions of Dr. Channell at the Federal Correctional Institution in Waseca, Minnesota. Dr. Channell examined, interviewed, and administered psychological tests to the defendant between September 12, 2005 and October 11, 2005. Dr. Channell diagnosed the defendant with cognitive disorder not otherwise specified, malingering, adjustment disorder with depressed mood, unspecified essential hypertension, and gastroesophageal reflux. Dr. Channell's written summary of the defendant's examination indicates that the defendant reported having suffered a stroke in 2000 that left him with

---

[1] The WAIS-III provides an estimate of verbal, performance, and overall intellectual functioning.

subsequent memory, concentration, and comprehension problems as well as depressive symptoms. Dr. Channell's observations of the defendant included the following:

> [h]e walked slowly, though his motor behavior was appropriate. He arrived promptly for scheduled appointments and was always polite and attentive. His eye contact was minimal. He stammered when he spoke, often pausing for lengthy periods of time and appearing to have trouble finding the words to express his thoughts . . . . [His] affect was mood congruent and appropriate. He became tearful on a few occasions, stating he was frustrated because he believed people thought he was 'making [his memory problems] up.' He described his mood as 'depressed.' . . . [h]is thoughts were normal in form and stream . . . . He was well oriented to person, place, time and situation. His memory was poor and his current intellectual functioning appeared below average.

Dr. Channell administered several psychological tests to the defendant. The WAIS-III was administered.[2] The WAIS-III results indicated that "[r]elative to individuals of a comparable age, the defendant's performance was in the extremely low range of intellectual functioning." Dr. Channell noted that these results were "significantly different" from the results of the WAIS-III administered in August, 2005, by Dr. Gersch.[3] The defendant's results of the WAIS-III administered by Dr. Gersch in August, 2005, were markedly higher than those obtained by Dr. Channell. Dr. Channell noted that there was no evidence of stroke or brain trauma occurring between August and October of 2005 which might explain the vast difference in scores. Dr. Channell noted that other possibilities for the wide disparity in scores could include mood symptoms such as

---

[2] Dr. Gersh also administered the WAIS-III when he evaluated the defendant in August, 2005.

[3] Specifically, Dr. Channell noted, "Mr. Vandenberg's performance on the WAIS-III in August, 2005 [administered by Dr. Gersh], suggests his intellectual functioning is either in the high borderline or low average range, and not the extremely low range as indicated by testing during this evaluation."

4

depression and anxiety affecting the defendant's performance on the test, or that the defendant could have been engaging in a deliberate attempt, during the second WAIS-III examination, to appear impaired.

Dr. Channell also administered the Test of Memory Malingering (TOMM) to the defendant, which is designed to assist in discriminating between individuals with memory impairment and those who are exaggerating or malingering such impairment. In regard to the TOMM examination, Dr. Channell observed:

> [the defendant] performed very poorly on the TOMM. An individual can correctly identify 50% of the items on the TOMM simply by guessing. The defendant scored lower than chance on each of three intervals . . . [and] [a]ny score lower than 90% correct on the second trial . . . is suggestive of malingering.

Given the defendant's poor performance on the TOMM, Dr. Channell administered a second memory test, the Rey 15-item Test. This test is designed to detect feigned or exaggerated memory complaints. An inability to recall nine of the fifteen items on the Rey 15-item Test is suggestive of malingering. Dr. Channell noted that the defendant recalled only four items, indicating that he may be malingering. Dr. Channell noted:

> the results of testing in August 2005 indicated the defendant's short-term visual memory (as measured by Trials 1 and 2 of the TOMM and the Rey-15 Item test) was intact given his measured IQ score. Based on such results, both the TOMM and the Rey-15 item Test strongly suggest exaggeration of memory impairment.

Dr. Channell testified by phone at the November 17, 2005 hearing. He testified that he could not rule out a diagnosis of dementia but could not diagnose the defendant with dementia. Dr. Channell opined that, based on the information that the defendant had provided and his performance on the psychological examinations, the defendant is not currently competent to stand trial. Specifically, Dr. Channell testified that based on the information provided by the defendant and assuming it to be truthful, the defendant had no idea what the charges against him were, how to proceed, the roles of people involved

5

in the justice system, and the possible penalties for the crimes charged. Dr. Channell noted that there is a possibility that the defendant is lying concerning his ability to understand, particularly in light of his scores on the malingering tests and the stark difference in testing results between Dr. Gersh's IQ test administered in August, 2005 and Dr. Channell's IQ test administered in October, 2005. Dr. Channell was asked for his opinion concerning the possibility that further treatment and examination could restore the defendant's competency or allow for better evaluation of his competency. Dr. Channell opined that while there is no therapy that can make the defendant's cognitive deficits disappear, there is a "real possibility . . . [that] if motivated . . . [the defendant could] gain a level of competency that he could proceed." Dr. Channell testified that with further therapy, the defendant could be made to understand the charges against him. Dr. Channell further testified that continued evaluation of the defendant could help to determine what the defendant is and is not truly capable of, and the extent to which he may be malingering.

Dr. Gersh also testified by telephone at the November 17, 2005 hearing. Dr. Gersh opined that the defendant is currently incompetent to stand trial. Dr. Gersh was unsure as to whether further testing or evaluation of the defendant would be helpful. Dr. Gersh noted that while he did not administer any tests for malingering, he looked for signs of it during his three hour evaluation of the defendant and did not identify any such signs. Dr. Gersh testified that based on what the defendant reported, the prison setting was an "adverse setting" for the defendant and as a result, the defendant may have been more anxious and depressed while he was being tested and evaluated by Dr. Channell at the Federal Correctional Institution in Waseca. Dr. Gersh opined that the defendant may have been "doing worse" in that setting than he would otherwise exhibit in a less aggravating setting, such as Dr. Gersh's office. Dr. Gersh opined that additional therapy would not increase the defendant's memory, but would likely increase the defendant's ability to understand "what is going on in the courtroom," the charges against him, and the possible

6

penalties associated with those charges. Dr. Gersh opined that it was possible that the defendant was "trying to look bad," or malingering, while he was being evaluated in the prison setting.

Upon examination of the findings by Dr.'s Channell and Gersh that the defendant is currently unable to assist in his defense, the court finds that the defendant is incompetent to stand trial. The defendant argues that further forced examination and treatment would not restore his competency and may in fact be harmful to him. The court is unpersuaded by the defendant's argument in this regard. Both Dr.'s Channell and Gersh agree that further treatment will likely result in the defendant becoming able to understand the charges against him, the penalties that he faces in conjunction with those charges, and the roles of those involved in the justice system. Dr. Channell also opined that further examination of the defendant could shed light on the issue of whether the defendant is in fact malingering. Accordingly, the court orders that the defendant be treated at a suitable facility for such reasonable time as is necessary to achieve competence, not to exceed four months.[4] The court further orders that when the director of said treatment facility determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and properly assist in his defense, the director shall promptly file a certificate to that effect with the clerk of the court which ordered the commitment. The court shall then hold a hearing to determine whether, by a preponderance of the evidence, the defendant has recovered such that he is competent to stand trial. At such time, the court shall order the defendant's immediate discharge from the treatment facility and set the date for trial.

---

[4] While ordinarily the defendant would be ordered into the custody of the Attorney General for transport to the designated facility, the defendant orally moved, at the November 17, 2005 hearing, for permission for the defendant's parents to be able to provide the defendant's transportation to the facility. The court grants this motion and orders that the defendant report at the designated facility at a date and time to be determined.

7

For the reasons discussed above, **IT IS ORDERED** that the government's motion for a finding that the defendant is incompetent to stand trial, that the defendant be hospitalized for treatment and further evaluation in a suitable facility for such a reasonable amount of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will become competent, and that the defendant comply with the prescribed treatment regimen at said facility, is granted.

November 22, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT